UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
Mohammed Muhibur Rahman, individually and                Index No. 06 Civ. 6198 (LAK) (JCF)
on behalf of all others similarly situated,

                      Plaintiff,                Jury Trial Demanded

        - against -

The Smith & Wollensky Restaurant Group, Inc.,
Smith & Wollensky Operating Corp., and
Park Avenue Cafe,
                      Defendants.
--------------------------------------------------------------------x

## AMENDED CLASS ACTION COMPLAINT

Mohammed Muhibur Rahman, by and through his attorneys, states as follows:

### Nature of the Action

1.      In this class action for employment discrimination, plaintiff Mr. Rahman asserts that

defendants discriminated against him and other employees on grounds of race, color,

religion and/or national origin.  Mr. Rahman asserts class claims under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. §1981, New York

State Human Rights Law, Exec. Law §296, New York City Human Rights Law, N.Y.

City Admin. Code §§ 8-107, 8-502, and the common law (breach of contract).  He seeks

classwide reliefs for compensatory and punitive damages, and injunctive and declaratory

reliefs, together with attorneys' fees and expenses.

### Parties

2.      Mr. Rahman is a U.S. citizen who is Muslim, non-white, and of South Asian descent.

3.      The Smith & Wollensky Restaurant Group, Inc., is a Delaware corporation doing

business in this State and elsewhere, with its principal offices at 880 Third Avenue in Manhattan.  It is traded in NASDAQ under the symbol "SWRG."

4.    Smith & Wollensky Operating Corp., is a New York corporation with its offices in this County.  Upon information and belief, it operates the Restaurant Group.

5.    Park Avenue Café is a restaurant owned and operated by the other defendants, and located at 100 East 63rd Street, New York, New York 10021.

6.    The Smith & Wollensky Restaurant Group develops, owns and operates high-end, high-volume restaurants in major cities across the United States. The original Smith & Wollensky, a traditional New York steakhouse, opened in 1977 and is currently the largest-grossing a la carte restaurant in the country. Since its inception, the company has grown to include 16 restaurants, including Smith & Wollensky in Miami Beach, Chicago, New Orleans, Las Vegas, Washington, D.C., Philadelphia and Columbus, Ohio, New York, Dallas, Houston, and Boston.

Jurisdiction And Venue

7.    Subject-matter jurisdiction exists under 28 U.S.C. § 1331, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.  Supplementary jurisdiction exists over the non-federal claims pursuant to 28 U.S.C. § 1367.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because defendants and Mr. Rahman reside and/or do business in this judicial district and a substantial portion, if not all, of the activities giving rise to Mr. Rahman's claims took place in this judicial district. Moreover, defendants' head offices are in this District, and all management policies, practices, and procedures are developed and implemented from here.

Class Action Allegations

9.      Mr. Rahman brings this action pursuant to Rule 23, Fed. R. Civ. P., on behalf of a class of

all past, present, and future non-managerial employees of defendant Park Avenue Cafe,

that are non-white, Muslims, non-whites, and/or of South Asian descent.

10.     Upon information and belief, defendant Park Avenue had about 50 class members

actively employed during the time of Mr. Rahman's employment, apart from those whose

employment was terminated over the years.  Thus, although the precise number of

employees who were fired or otherwise discriminated against is currently unknown, it is

far greater than can be feasibly addressed through joinder.  Thus, the members of the

Class identified herein are so numerous that joinder of all members is impracticable.

11.     Common questions of law and fact predominate in this action including, but not limited

to, the following:

a.      whether defendants engaged in unlawful discrimination against Mr. Rahman and

the Class on grounds of race, color, religion and/or national origin;

b.      whether defendants created, maintained, condoned, encouraged and/or tolerated  a

hostile work environment suffused with discrimination based on race, color,

religion and/or national origin;

c.      whether defendants engaged in discrimination against Mr. Rahman and the Class

in matters of compensation or other terms or conditions of employment;

d.      Whether defendants retaliated against Mr. Rahman and/or the Class for asserting

their civil rights;

e.      whether the Class should receive prospective injunctive relief;

f.       whether defendants may be liable for compensatory damages and the measure of

such damages;

g.       whether defendants are liable for punitive damages and, if so, the amount of such

damages.

12.     Adjudications with respect to individual members of the Class would, as a practical

matter, be dispositive of the interests of other Class members not parties to the

adjudication.  Individual litigation of these claims would be entirely impractical and

would impair the ability of Class members to protect their interests.

13.     Defendants have acted and/or refused to act on grounds generally applicable to the Class,

making appropriate declaratory and injunctive relief with respect to Mr. Rahman and the

Class as a whole. Class members are entitled to injunctive relief to end Defendants'

common, uniform, and unfair racially discriminatory personnel policies and practices.

14.     Mr. Rahman's claims are typical of those of the Class, and Mr. Rahman will fairly and

adequately protect the interests of the Class.

15.     Mr. Rahman's interests do not conflict with those of the Class.

16.     Mr. Rahman will fairly and adequately represent the Class, and has retained competent

counsel experienced in class action litigation.

17.     Mr. Rahman is not aware of any other proceeding arising out of the issues in this action.

18.     This Court is the appropriate forum for the instant action.  Defendants have their head

quarters in this District, and all activities at issue took place here.

19.     Mr. Rahman anticipates no difficulty in the management of this class action.

20.     A class action is superior to other available methods for the fair and efficient adjudication

of this controversy.  The Class members have been damaged and are entitled to recovery as a result of Defendants' common, uniform, and unfair racially discriminatory personnel policies and practices. Defendants have computerized payroll and personnel data that will make calculation of damages for specific Class members relatively simple. The propriety and amount of punitive damages are issues common to the Class.

<u>Factual Background</u>

21.     At all relevant times, defendants engaged in discrimination against non-white employees at Park Avenue Café on the basis of race, color, religion and/or national origin with respect to job assignment, compensation and other terms or conditions of employment, and/or by creating a racially-hostile and abusive climate, and/or unlawfully or discriminatorily terminating employees on false pretenses.

22.     At all relevant times, defendants also engaged in discrimination against Muslim employees at Park Avenue Cafe on the basis of their religion with respect to job assignment, compensation and other terms or conditions of employment, and/or by creating a racially-hostile and abusive climate, and/or unlawfully or discriminatorily terminating employees on false pretenses.

23.     Mr. Rahman was employed as a waiter at Park Avenue Café from 1998 until March 12, 2005, when he was unlawfully and discriminatorily terminated by Defendants.

24.     During his employment, Mr. Rahman was repeatedly subjected to unrelenting barrage of racist abuse and harassment from defendants' managers, chefs, and other supervisory employees.  They openly declared their hostility with statements such as "I have too many Indians working here" or that "Indian people are good only for cleaning toilets."

25.     The constant verbal abuse, harassment, and hostility was extreme and outrageous.

Indeed, defendants' managers openly told Mr. Rahman that "all Muslims should be

killed" and that Mr. Rahman should go "die in Afghanistan."

26.     Defendants' managers ridiculed Mr. Rahman's religious beliefs, even sarcastically

commenting that God would not mind if Mr. Rahman drank liquor on defendants'

manager's birthday.  When Mr. Rahman refused, defendants' managers made, hostile

comments such as "you should not be working here if you are not going to taste wine."

Mr. Rahman, a devout Muslim, does not consume alcohol in any form.

27.     Defendants fostered an intense climate of racial/religious hostility and abuse at the

workplace that was both subjectively and objectively threatening to Mr. Rahman and

other Class members, interfering with their ability to perform their work.

28.     Defendants discriminated on the basis of race, religion, creed, and/or national origin in

terms of pay and compensation issues by refusing to permit their non-white or Muslim

waiters to serve private VIP parties conducted at the townhouse.  Defendants routinely

assigned white waiters to such parties where the tips were likely to be significantly

higher.

29.     In the same manner, defendants discriminated on the basis of race, religion, creed, and/or

national origin in terms of table assignments, schedule, and kitchen table.  Defendants

routinely assign white waiters so to maximize their tips, at the expense of Mr. Rahman

and other minorities.

30.     Moreover, Mr. Rahman was denied compensation that was routinely paid to white

employees for the same work.  For example, when defendants distributed gratuities

6

received for parties amongst the staff, whites and non-Muslims who functioned as

"Captain" were paid an additional percent (6%) over and above that paid to the others.

However, when Mr. Rahman was assigned to and did perform as "Captain" for such

parties, he was denied the additional 6%.

31.    Mr. Rahman complained about defendants' discriminatory practices and consistent

harassment to defendants' managers, including those at defendants' headquarters.

However, defendants did nothing to remedy the problem.  Defendants failed and

neglected to discipline abusive, racist employees, and never bothered to institute or

implement practices or policies to discourage or punish such misconduct.

32.    This climate of racial and religious hostility culminated in Rahman's unlawful and

wrongful termination by defendants on the basis of demonstrably false accusations of

theft.  In fact, the termination was in retaliation for Mr. Rahman's objecting to

defendants' managers' and chefs' racist misconduct.

33.    On February 12, 2005, defendants' managers made several racist comments.  Mr.

Rahman objected.  Two days later, on February 14, 2005, Mr. Rahman went on a vacation

which had been scheduled earlier.  When he returned from vacation on March 12, 2005,

defendants summarily terminated his employment, accusing him of theft on February 13,

2005.

34.    Defendants claimed that on February 13, 2005, Mr. Rahman had recorded payment for

$50 of a party's check using a fraudulent gift certificate while keeping $50 of cash that,

according to defendants, the customer had given Mr. Rahman to pay their bill.  Mr.

Rahman did this, according to defendants, by improperly accessing and utilizing

defendants' computer system with a manager's employee code.  In fact, this was manifestly untrue and impossible:  the manager's employee code was unusable since that manager used a "Micros Card".  Defendants' computer system did *not* permit use of both a "Micros Card" and the employee code.

35.     In that termination note of February 13, 2005, defendants also falsely recorded as having warned Mr. Rahman about a similar misconduct on "9/18/05" - seven months later!  But Mr. Rahman's name appeared in the work schedule for at least 3 weeks following February 13, 2005 - the date of the alleged "theft" - abundantly establishing that the termination note with trumped up charges was back-dated.

36.     Mr. Rahman complained about the retaliation and wrongful termination to defendant's senior management at its headquarters.  However, senior management did nothing.

37.     Thereupon, Mr. Rahman filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., with respect to race, color, religion and/or national origin.

38.     Defendants subjected other non-white, South Asian and/or Muslim employees to this climate of racial and/or religious hostility including without limitation racist or xenophobic comments, disparaging remarks about their religion and wrongful termination.  Upon information and belief, defendants implemented the same discriminatory practices in their hiring policy as evidenced by repeated statements that there were "too many Indians working" as Defendants' employees.

EEOC Findings of Fact

39.     On or about June 13, 2005, Mr. Rahman filed a Charge of Discrimination, No.

        160-2005-02817, with the EEOC.

40.     Mr. Rahman was not represented by counsel at any time during the EEOC investigation.

        Upon concluding its investigation, the EEOC issued its findings on Mr. Rahman's

        complaint on or about April 7, 2006.

41.     The EEOC interviewed witnesses, reviewed documents, and scrutinized other evidence.

        Based on its investigation, the EEOC issued a "DETERMINATION" on the merits of Mr.

        Rahman's charges:

> [T]he evidence reveals that [defendants] subjected both [Mr.
> Rahman] and other employees to harassment based on their
> religion, race, and national origin. Witness testimony reveals
> [defendants] subjected [Mr. Rahman] and similarly situated
> Muslim employees to harassment based on their religion, including
> insulting their God (Allah), cursing at them, and telling them to go
> back to their country. . .   Credible witness testimony corroborates
> [Mr. Rahman's] allegations that South[] Asian servers are given
> less desirable parties and sections than White servers.

42.     The EEOC also reviewed defendants' claims of having terminated Mr. Rahman's

        employment for theft.  After reviewing the evidence on this issue, the EEOC substantially

        rejected defendants' proffered excuse as pretextual.

43.     Based on the foregoing conclusions, the EEOC determined that

> Based on the Commission's investigation of this charge, including
> a review of testimonial and documentary evidence, there is
> reasonable cause to believe [defendants] subjected [Mr. Rahman]
> and a class of similarly situated employees to harassment based on
> their race, national origin, and/or religion.  There is reasonable
> cause to believe [Mr. Rahman] was terminated by [defendants]

9

based on his race, national origin and/or religion in violation of
Title VII.

44.     Accordingly, Mr. Rahman brings this action on behalf of himself and all others similarly

situated, to seek all legal and equitable remedies permitted under Title VII and other

applicable state or federal law to redress Defendants' wrongful practices and conduct.

45.     By letter dated May 16, 2006, the EEOC sent to Mr. Rahman the Notice of Right to Sue

stating that although it had found Title VII violations, it would not commence a legal

proceeding:

>       The EEOC found reasonable cause to believe that violations of the
>       statute(s) occurred with respect to some or all of the matters
>       alleged in the charge . . . [T]he EEOC has decided that it will not
>       bring suit against [defendants] at this time based on this charge and
>       will close its file in this case.  This does not mean that the EEOC is
>       certifying that [defendants are] in compliance with the law, or that
>       the EEOC will not sue [defendants] later or intervene later in your
>       lawsuit if you decide to sue on your own behalf.

46.     The said Notice was sent by U.S. Mail, and this action is brought within 90 days of

receipt of such Notice.

COUNT I

(Violations of Title VII, 42 U.S.C. §§ 2000e et seq. - Intentional Discrimination,

Hostile Work Environment)

47.     Mr. Rahman repeats and realleges each and every allegation set forth in all of the

foregoing paragraphs as if fully set forth herein.

48.     This claim is brought individually on behalf of Mr. Rahman as well as on behalf of the

Class.

49.    Defendants have intentionally subjected Mr. Rahman and the Class to discrimination

based on race, color, religion and/or national origin.  Defendants routinely assigned white

waiters to better table with larger parties than non-white waiters with the result that

nonwhite waiters employed at Park Avenue Café received significantly less compensation

in tips than their white counterparts.

50.    In addition, defendants subjected Mr. Rahman and the Class to hostile work environment

suffused with discrimination based on race, color, religion and/or national origin, all in

violation of Title VII of the Civil Rights Act of 1964.  Defendants either knew or should

have known of this intensely hostile work environment permeated with harassment,

verbal abuse, and intimidation against Mr. Rahman and the Class.  By failing and/or

refusing to act or otherwise take any remedial action, defendants condoned, sanctioned,

tolerated, ratified or otherwise approved this discriminatory hostile work environment.

51.    Furthermore, defendants engaged in systematic discrimination against Mr. Rahman and

the Class by denying them equal pay and compensation with white employees in violation

of Title VII by denying them certain job assignments and/or placements.  Such conduct

was intentional within the meaning of Title VII, 42 U.S.C. § 2000e.

52.    Furthermore, defendants have engaged in systematic discrimination against Mr. Rahman

and the Class by wrongfully and unlawfully terminating employees, under false pretenses,

on the basis of race, color, religion and/or national origin.

53.    Mr. Rahman and the Class have suffered economic loss, back and front pay, denial of

employment benefits and mental anguish, humiliation and emotional distress as a direct

result of defendants' discriminatory practices.

54.     Accordingly, Mr. Rahman respectfully requests that the Court award judgment and relief against defendants as sought herein including without limitation, compensatory and punitive damages, attorneys' fees and expense, and all such legal and equitable remedies to which Mr. Rahman and the Class are entitled for violations of Title VII.

COUNT II

(Violations of 42 U.S.C. §1981)

55.     Mr. Rahman repeats and realleges each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

56.     This claim is brought individually on behalf of Mr. Rahman as well as on behalf of the Class.

57.     Defendants have maintained, and continue to maintain, an intentionally discriminatory system with respect to recruitment, hiring, job assignments, transfers, employment benefits and termination.

58.     Defendants' conduct constitutes illegal intentional discrimination with respect to the making, performance, modification, and termination of contracts prohibited by 42 U.S.C. § 1981.

59.     Mr. Rahman and the Class have suffered compensatory damages and economic loss as a result of (a) not being permitted to continue employment; and (b) being subjected to discriminatory terms or conditions of employment, all in violation of 42 U.S.C § 1981.

60.     Accordingly, Mr. Rahman respectfully requests that the Court award judgment and relief against defendants as sought herein including without limitation, compensatory and punitive damages, attorneys' fees and expense, and all such legal and equitable remedies

to which Mr. Rahman and the Class are entitled for violations of 42 U.S.C. § 1981.

## COUNT III

(Equitable Relief or Permanent Injunction)

61.    Mr. Rahman repeats and realleges each and every allegation set forth in all of the

foregoing paragraphs as if fully set forth herein.

62.    This claim is brought individually on behalf of Mr. Rahman as well as on behalf of the

Class.

63.    Mr. Rahman and the Class have no plain, adequate, or complete remedy at law to redress

the wrongs alleged herein, and the injunctive relief sought in this action is the only means

of securing complete and adequate relief.  Mr. Rahman and the Class he seeks to

represent are now suffering and will continue to suffer irreparable injury from defendants'

ongoing discriminatory acts, omissions, policies and practices.

64.    Accordingly, Mr. Rahman and the Class respectfully request that the Court award the

injunctive relief sought herein to remedy the violations of Title VII and 42 U.S.C. § 1981

alleged herein.

## COUNT IV

(Violations of Title VII, 42 U.S.C. §§ 2000e, Retaliation & Wrongful Termination)

65.    Mr. Rahman repeats and realleges each and every allegation set forth in all of the

foregoing paragraphs as if fully set forth herein.

66.    This claim is brought individually on behalf of Mr. Rahman.

67.    Defendants engaged in unlawful discrimination by their wrongful termination of Mr.

Rahman in retaliation for his efforts to oppose a hostile work environment, in violation of

13

Title VII of the Civil Rights Act of 1964.  Such wrongful termination constitutes intentional discrimination under federal law.

68.    Accordingly, Mr. Rahman respectfully requests compensatory and punitive damages, as well as equitable relief, to remedy the violation of Title VII alleged herein.

COUNT V

(Violations of New York State Human Rights Law)

69.    Mr. Rahman repeats and realleges each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

70.    This claim is brought individually on behalf of Mr. Rahman as well as on behalf of the Class.

71.    By their conduct aforesaid, defendants discriminated against Mr. Rahman and the Class on grounds of race, creed, color, and/or national origin.  Thereby, defendants violated New York State Human Rights Law, N.Y. Exec. L., §296 et seq.

72.    Accordingly, Mr. Rahman respectfully requests that the Court award judgment and relief against defendants as sought herein including without limitation, compensatory and punitive damages, attorneys' fees and expense, and all such legal and equitable remedies to which Mr. Rahman and the Class are entitled for violations of New York State Human Rights Law, N.Y. Exec. L., §296 et seq.

COUNT VI

(Violations of New York City Human Rights Law)

73.    Mr. Rahman repeats and realleges each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

74.    This claim is brought individually on behalf of Mr. Rahman as well as on behalf of the

        Class.

75.    By their conduct aforesaid, defendants discriminated against Mr. Rahman and the Class

        on grounds of race, creed, color, and/or national origin.  Thereby, defendants violated

        New York City Human Rights Law, N.Y. City Admin. Code §§ 8-107, 8-502.

76.    Accordingly, Mr. Rahman respectfully requests that the Court award judgment and relief

        against defendants as sought herein including without limitation, compensatory and

        punitive damages, attorneys' fees and expense, and all such legal and equitable remedies

        to which Mr. Rahman and the Class are entitled for violations of New York City Human

        Rights Law, N.Y. City Admin. Code §§ 8-107, 8-502.

<u>COUNT VII</u>

(Breach of Contract)

77.    Mr. Rahman repeats and realleges each and every allegation set forth in all of the

        foregoing paragraphs as if fully set forth herein.

78.    This claim is brought individually on behalf of Mr. Rahman as well as on behalf of the

        Class.

79.    By their conduct aforesaid, defendants breached the implied covenant of good faith and

        fair dealing underlying its employment contracts with Mr. Rahman and the Class.  As a

        result of such breach, Mr. Rahman and the Class sustained damages.

80.    Accordingly, Mr. Rahman respectfully requests that the Court award judgment and relief

        against defendants as sought herein including without limitation, compensatory and

        punitive damages, attorneys' fees and expense, and all such legal and equitable remedies

to which Mr. Rahman and the Class are entitled for breach of contract.

JURY TRIAL DEMAND

81.     Mr. Rahman and the Class demand a trial by jury on all issues so triable.

WHEREFORE, Mr. Rahman and the Class demand judgment and prays for relief against defendants as follows:

a.      Determining that the instant action be maintained as a class action pursuant to Rule 23, Fed. R. Civ. P., and appointing Mr. Rahman to be the Class Representative, and Chittur & Associates, P.C., to be Class Counsel;

b.      awarding compensatory, punitive, and/or treble damages to Mr. Rahman and Class members in such amount, not less than $100 million, as may be determined after discovery and trial including without limitation back pay, front pay, benefits, and such other amounts;

c.      awarding punitive and exemplary damages to Mr. Rahman and the Class against defendants for their unlawful, deliberate and intentional conduct;

d.      awarding a declaratory judgment that defendants acts and practices at issue are unlawful and violative of Title VII, 42 U.S.C. §§ 2000e et seq., 42 U.S.C. §1981, New York State Human Rights Law, Exec. Law §296, New York City Human Rights Law, N.Y. City Admin. Code §§ 8-107, 8-502, and the common law;

e.      awarding appropriate declaratory and injunctive relief against defendants including without limitation,

i.      Reinstatement of all Class members who may be desirous of reinstatement;

    ii.      Restraining defendants from engaging in any discriminatory conduct or

policies, practices, customs, and usages set forth herein;

    iii.      Requiring defendants to institute and implement policies, practices, and

programs to provide equal employment opportunities for all minorities,

and that they eradicate the effects of past and present unlawful

employment practices;

    f.      awarding Class plaintiffs and Class members the costs of this action, including

reasonable attorneys' fees and expenses, experts' fees and other disbursements;

    g.      for such further and other reliefs as may be just and proper..

Dated:  New York, New York                  **Chittur & Associates, P.C.**
       January 31, 2008

_____/S/_____
Krishnan S. Chittur, Esq. (KC 9258)
286 Madison Avenue Suite 1100
New York, NY 10017
Tel: (212) 370-0447

Attorneys for plaintiff and the Class